UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6364 CR-FERGUSON

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ANDRZEJ MASALSKI,
a/k/a Jurek Drzewo

        Defendant.
_____/



## I  DEFENDANT'S MOTION TO QUASH SEARCH WARRANT AND SUPPRESS EVIDENCE OBTAINED IN EXECUTION THEREOF

## II DEFENDANT'S MOTION TO SUPPRESS WARRANTLESS SEARCH OF AUTOMOBILE AND TO SUPPRESS EVIDENCE OBTAINED THEREIN

**COMES NOW,** the Defendant, **ANDRZEJ MASALSKI,** by and through his undersigned counsel, and in accordance with, and pursuant to, Rule 12 (d) (3) moves this Honorable Court, to Quash the search warrant executed herein, as well as any warrantless search of the Defendant's vehicle, and would show for grounds as follows:

    I.    THE SEARCH OF THE DEFENDANT'S SILVER MERCEDES

          ML320 SUV ON MARCH 8TH, 2000.

          On March 8th, 2000, the Defendant, Andrzej Masalski, was present

          on premises at 1291A South Powerline Road, Pompano Beach,

          Florida 33069, at a place called the Postal Palace, in order to pick

          up a document left in mailbox 264 then under the name of one Thor



LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040



Danylyk. During the course of that activity, he was approached and confronted by Special Agent Rhonda Maskus of the Immigration and Naturalization Service. Agent Maskus attempted to arrest the Defendant, and he ran from the premises, allegedly dragging Agent Maskus with him. On the premises, in a place assigned therefor, the Defendant had parked a 2000 Mercedes SUV ML320 with the doors closed and the keys taken from the ignition. When he absconded from Agent Maskus, he ran away from the area, leaving the vehicle unattended. Thus, the vehicle was not mobile, and the Agents herein were in possession of it, retarding its movement. The Defendant was neither arrested in the vehicle, nor was the vehicle utilized for any criminal purpose. Nevertheless, Agents of the Government searched the vehicle and seized from its interior compartment other closed items within which were located a Social Security Administration Card and what the Government alleges was a false INS I-94 form. Both of these documents are expected to be entered into evidence against the Defendant in a subsequent proceeding and, in fact, form the basis for two of the three counts in the Indictment herein.

II.  **THE SEARCH OF THE DEFENDANT'S APARTMENT BY SEARCH WARRANT**.

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A.
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

Subsequently, on March 11th, 2000, Agents of the Government, after locating an apartment that they confirmed was being lived in by the Defendant, and where the Defendant was a tenant, received a key to those locked premises and entered into the residence without exigency, a search warrant, or the consent of the tenant, the Defendant. While on the premises, they observed items which they considered to be consistent with the production of, or the manufacture of, fraudulent identification documents. They subsequently left the premises and applied for a search warrant before a United States Magistrate Judge and, in the process, utilized information and observations obtained as a result of the previous warrantless, unauthorized entry onto the premises. The search warrant was subsequently, on March 12th, 2000, executed on the property and various items of evidence, including a laminating machine, shredder, scanner, laminated paper, etc. (more particularly described in the inventory and return attached hereto as Exhibit I) were seized. It is expected that the documents and items seized from that search warrant will be utilized at trial against the defendant. No exigent circumstances existed for the entry onto the premises, nor was any consent given by a person who had a reasonable expectation of privacy therein, to wit: the Defendant.

3

> The search and seizure herein, pursuant to warrant, were tainted and infected by observations made during an unauthorized and unlawful entry in violation of the Fourth and Fourteen Amendments to the United States Constitution, and, thus, the said warrant is "tainted" with the fruit of the poisonous tree as decried in <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963) and <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385 (1920).

### MEMORANDUM OF LAW

A. THE WARRANTLESS SEARCH OF THE DEFENDANT'S MOTOR VEHICLE

It is axiomatic, and a matter of law, that where a motor vehicle is <u>mobile</u>, and where it is able to freely transverse in commerce, probable cause alone will suffice to stop, search, and seize items from that vehicle. <u>Carroll v. United States</u>, 267 U.S. 132 (1925). However, when that vehicle is no longer mobile but is either being held by Agents of the State or otherwise is disabled from free movement, it becomes an item for which an appropriate warrant must be secured before the compartments contained therein, closed or otherwise, can be searched and items can be seized for evidence. See <u>Shurman v. U.S.</u>, 219 F.2d 282 (5th Cir. 1955) Notable exceptions to that warrant requirement are consent, exigent circumstances, etc. No such exception applies in the instant cause. The

4

Defendant's vehicle was parked in a parking area with the doors closed. The keys were in the possession of the Government, and no exigency was in existence for the entry into its compartment and the seizure of a second closed compartment therein. Additionally, there was no probable cause for searching the automobile. The entire reason for the Agents seeking to detain the defendant was based upon information they had regarding a package he was picking up at the Postal Palace. The Agents had no reason to believe that the car contained anything illegal or anything used in furtherance of any alleged criminal activity. The warrant requirement of the Fourth Amendment of the Constitution requires that a court issue, and that the police execute, a valid warrant for the seizure of such a closed container as the inside compartment of an automobile. The Carroll doctrine not withstanding, it is an unreasonable search and seizure for Agents of the Government to conduct such an intrusion and seizure of evidence. Such legal requirements are not mere niceties which require "lip service." They are part of the organic law of the Nation and require strict adherence. The Government claims it was performing an "inventory" search. However, an inventory search may only be reasonably conducted in good faith, pursuant to established guidelines. Colorado v. Bertine, 479 U.S. 367 (1987). The automobile was parked in a legal parking space during normal working hours. It was not a hindrance to traffic or a threat to public safety. None of the property contained within the vehicle was at

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A.
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

risk of being lost or stolen, as the car was locked. There was no reason for performing an inventory search at that time. Therefore, on the fact driven circumstances herein, the Defendant verily moves to suppress all evidence seized as a result of the unauthorized, and unreasonable entry into the Defendant's closed and immobile vehicle, without probable cause, without benefit of warrant or other exigent circumstance, and the further suppression of any and all derivative evidence and information accruing therefrom.

B.   THE SEARCH WARRANT EXECUTED ON MARCH 11TH, 2000.

After the Defendant had absconded from the attempted arrest by Special Agent Maskus, and after a warrant to arrest him for that obstruction had been issued on March 10th, 2000, and after an "inventory" was conducted of the contents of Masalski's vehicle prior to its being towed, a "keycard" was found. Agents thereafter located entry gates at Sable Palms apartment community, which was activated by the keycard. On March 10th, 2000, a leasing agent confirmed that Masalski was a resident of that complex in building 4501, unit # 29. Upon review of the records for that unit, it was determined that the <u>lease</u> was in the name of two individuals with names <u>other than</u> Masalski. Although the postal carrier assigned to deliver mail to the apartment complex did not know the

6

defendant's name, he identified the photograph (Masalski) provided by INS Agents as a person that she had seen within the complex numerous times. Surveillance was then conducted on the complex, and it was undetermined whether or not any of the subject's alleged vehicles were parked in any of the garages. On March 11th, 2000, Agents went to that unit (No. 29) and began knocking on the unit door to determine if anybody was inside. Although they heard "noise" emanating from inside the apartment, there was no indication that the defendant was resident therein. Over a dozen other residents of the complex recognized the photograph of Masalski as the resident of that apartment, and some even described the defendant's wife and remembered that Masalski drove a Silver Mercedes SUV similar to the one that was impounded at the scene of the alleged arrest. Indeed, several residents interviewed stated they had last observed Masalski, (the defendant) at the apartment complex on either March 7th or March 8th, 2000. It should be remembered that March 8th, 2000 was the date that the defendant allegedly absconded from the arrest site. Without further information as to the presence of the defendant in the apartment, without any evidence whatsoever that there existed therein evidence of the commission of a crime, without the authority of Masalski or of any individual in whose name the lease to that apartment was listed, with no exigent circumstances that were

7

readily apparent to the police officers, and with no search warrant, officers, on March 11th, 2000, obtained a key from the leasing office and entered the unit. No individual was present in the unit at the time of entry. However, during the course of reviewing what the circumstances were inside the unit, several items of alleged evidence were seen "in plain view". With that, Agents left the residence, presented themselves to a United States Magistrate Judge, made application for a warrant (attached hereto, and made a part hereof), on March 12th, 2000, and a search warrant was issued based solely upon their prior unauthorized entry onto the premises and what they saw while being illegally, and without authorization, inside the residence. Items were seized thereby which the Government expects to enter into evidence in a subsequent trial hereon.

The warrants requirement of the United States Constitution, and specifically the Fourth Amendment thereto, <u>requires</u> that before officers enter onto premises wherein an individual entertains, or is alleged to entertain, a reasonable expectation of privacy, they must have probable cause to believe that evidence exists inside that closed area that would justify and support the issuance of a search warrant. <u>Article 4 US Constitution</u>; <u>Stanford v. Texas,</u> 379 U.S. 476 (1965); <u>Go-Bart v. United States,</u> 282 U.S. 344 (1931). Where,

8

however, the entry onto the property is unauthorized to begin with, or unreasonable under the circumstances, and where, as a result of that incipient illegality, information is discovered and observations are made which give rise to probable cause to seek a search warrant, the appearance before a Magistrate Judge and the acquisition of a search warrant under those circumstances will not validate a subsequent search. The search warrant itself will be infected with the same illegality as that which accompanied the initial entry. Chimel v. California, 395 U.S. 752 (1969); Wong Sun v. United States, 371 U.S. 471 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920); Goulded v. United States, 255 U.S. 452, 465 (1921). In the instant case, the Agent's "probable cause" was derived specifically from an illegal entry onto the premises on March 11th, 2000, where they observed items of evidence, or what they considered to be evidence, and then utilized the fruits of that illegal entry to secure a search warrant and seize the very same items that they had seen in their unreasonable foray onto those premises. The securing of a key from a "leasing agent" does not insulate the Agents from an unreasonable search and seizure. See Stanford v. Texas, 379 U.S. 476 (1965); United States v. Lefkowitz, 285 U.S. 452, 464 (1932). Nor did there exist exigent circumstances or any other type of consensual understanding from a person whose expectation of privacy was

9

subsequently violated, to wit, the Defendant. While the intruding Agents did have an arrest warrant, they had no search warrant. An arrest warrant alone does not sanction entry into a private residence. Vasquez v. Snow, 616 F.2d 217 (5th Cir. 1980). In order for agents to enter into a private residence to execute an arrest warrant, intruding agents must have reason to believe that the suspect is actually located within the residence at the time of the entry. U.S. v. Magluta, 44 F.3d 1530 (11th Cir. 1995). There are no facts that suggested to the intruding Agents that the Defendant was present on the subject premises at the time; in fact, he was not.

Wherefore, the search warrant itself being the fruit of unauthorized and illegal observations made on the subject premises, without which the warrant would have been unable to be secured because of a lack of sufficient probable cause to believe that evidence was present thereon, the defendant respectfully moves this Honorable Court to suppress the evidence, observations, and any derivative evidence or observations seized from the premises of unit #29, building 4501 of Sable Palms apartment community and to grant unto him an evidentiary hearing in this cause within which to present evidence and argue the merits of both the automobile search and the apartment search occasioned herein.

10

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

C. Other grounds to be argued ore tenus.

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to Roger Powell, Assistant U.S. Attorney, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida, 33394, on this 12th day of March, 2001.

Respectfully submitted,

BOGENSCHUTZ & DUTKO, P.A.
Attorneys for the Defendant/Masalski
Colonial Bank Building
600 South Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
Telephone (954) 764-2500

BY: _____
J. DAVID BOGENSCHUTZ
Florida Bar # 131174

11